(No. 40769.—

COMMITTEE OF LOCAL IMPROVEMENTS OF THE TOWN OF ALGONQUIN, Appellant, *vs.* OBJECTORS TO THE ASSESSMENT, Appellees.

*Opinion filed January 19, 1968.—Rehearing denied March 26, 1968.*

Franz, Franz & Weed, of Crystal Lake, for appellant.

Covey & McKenney, of Crystal Lake, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

The issue in this case is the constitutionality of the 1965 statute which authorizes townships to levy special assessments to defray the cost of improving, widening or extending streets or other public ways within, or abutting, platted subdivisions. (Ill. Rev. Stat. 1965, chap. 139, pars. 143.101 through 143.161.) Proceeding under this statute, the "Committee of Local Improvements of the Town of Algonquin" filed a petition for the confirmation of a "special tax assessment roll." The circuit court of McHenry County sustained objections to the petition and dismissed it on the ground that section 9 of article IX of the constitution of Illinois does not authorize townships to make local improvements by special assessment. The Committee has appealed.

In our opinion the judgment of the circuit court was correct. Like that court, we find it unnecessary to discuss other objections to the proceedings, or other constitutional provisions that might affect the validity of the statute. Section 9 of article IX of the constitution provides: "The general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to

assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

In *Updike* v. *Wright*, (1876) 81 Ill. 49, the court invalidated a special assessment levied by a drainage district to build a flood control levee along the Wabash river. One of the grounds of decision was that a drainage district was not authorized, under section 9 of article IX of the constitution, to levy special assessments. Under that section, the court held, " * * * the General Assembly can only vest cities, towns and villages with power to make local improvements by special assessments, or special taxation upon contiguous property benefited by such improvement. By necessary implication, it is inhibited from conferring that power upon other municipal corporations or upon private corporations. Only cities, towns and villages are within the constitutional provisions, and, although other municipal corporations may be vested with power to assess and collect taxes for corporate purposes, the limitation is absolute, such taxes shall be uniform in respect to persons and property within the jurisdiction imposing the same." 81 Ill. at 53-54.

Thereafter, in 1878, the first amendment to the constitution of 1870 was adopted. That amendment added to section 31 of article IV a provision specifically authorizing drainage districts to levy special assessments. The effect of the added provision was to amend section 9 of article IX by enlarging the class of municipal corporations that could make special assessments to include drainage districts as well as cities, towns and villages. "Section 31 of article 4 of the constitution of 1870 authorizes the General Assembly to pass laws providing for the organization of drainage districts and to vest the corporate authorities of said districts with power to construct and maintain drainage systems by special assessments upon the property benefited thereby. This section is framed as though it were a grant of power to the General Assembly, but it is, in fact, an exception to the

limitations placed upon the power of the General Assembly by article 9 of the constitution. Section 9 of article 9 required all taxes levied by such municipal corporations as drainage districts to be uniform in respect to persons and property within the district. This limitation was removed by section 31 of article 4, so that special assessments could be levied upon such property in the district as received benefits from the drainage system constructed." *Marshall v. The Commissioners of Upper Cache Drainage District,* 313 Ill. 11, 15; see also, *Wilson v. Board of Trustees,* 133 Ill. 443.

*People ex rel. Van Slooten v. Cook County Commissioners,* 221 Ill. 493, involved the validity of a statute which authorized certain counties to remove noxious weeds from the lands and lots in certain townships in those counties if the owners of the land refused to do so, and to assess the cost against the owners. The court held that the statute violated the uniformity requirements of section 1 of article IX, and that the only exception to the requirement of uniformity, section 9 of article IX, did not apply because "no authority is conferred upon the legislature to vest the authorities of counties or townships with power to make local improvements by special assessment * * *." 221 Ill. at 497.

To avoid the effect of these decisions, the appellants argue that the word "towns" means both townships established under the township organization act (Ill. Rev. Stat. 1965, chap. 139, par. 1 *et seq.*) and incorporated towns, and that as used in section 9 of article IX of the constitution the word "should be given its broadest possible interpretation * * *." Although the term "towns" is sometimes used to refer to townships, the distinction between the two is clear.

A township is a geographical division of a county, basically 36 miles square, established by commissioners appointed by the county board to divide the county "into towns, making them conform to the townships

according to government surveys." (Ill. Rev. Stat. 1965, chap. 139, par. 6.) A township transacts its business at an annual town meeting. (Ill. Rev. Stat. 1965, chap. 139, par. 39.) Incorporated towns, on the other hand, are units of local government which were organized under special charters granted by the legislature prior to the adoption of the constitution of 1870. That constitution prohibited local or special laws "[i]ncorporating cities, towns or villages, or changing or amending the charter of any town, city or village," (Const. of 1870, art. IV, sec. 22.) Since 1870 no special charter towns, cities or villages have been created, and since that date there has been no statute under which a newly incorporated town could be created. (See Platt, Illinois Municipal Code, S.H.A., chap. 24, pp. 65, 66.) While the number of incorporated towns has diminished, they were very numerous when the constitution of 1870 was adopted. In 1867, for example, many such special charters were granted, or amended. 3 Private Laws, 1867, Index, pp. iv-v.

The distinction between the two governmental units has often been pointed out. "A town organized under the township organization laws of the State is, as before said, a political or civil subdivision of a county. It is created as a subordinate agency to aid in the administration of the general State and local government. The distinction between such a town and other chartered municipal corporations proper, sometimes denominated towns, is, that a chartered town or village is given corporate existence at the request or by the consent of the inhabitants thereof for the interest, advantage or convenience of the locality and its people, and a town under township organization is created almost exclusively with a view to the policy of the State at large for purposes of political organization and as an agency of the State and county, to aid in the civil administration of affairs pertaining to the general administration of the State and county government, and is imposed upon the territory in-

cluded within it without consulting the wishes of the inhabitants thereof." *People ex rel. Deneen* v. *Martin,* 178 Ill. 611, 621; see also, *Martin* v. *People ex rel. Huck,* 87 Ill. 524.

The constitution of 1870 demonstrates that its framers were aware of the distinction between townships and incorporated towns. For example, section 6 of article IX uses both "towns" and "townships," as does section 3 of article VIII, while section 4 of article VIII mentions only "townships." For almost a hundred years the distinction drawn by the constitution has been maintained, and it should not now be set aside.

Finally, the appellants point to the fact that section 9 of article IX has not been held to prohibit the levy of special assessments by sanitary districts (*Taylorville Sanitary District* v. *Winslow,* 317 Ill. 25), or by park districts. (*VanNada* v. *Goedde,* 263 Ill. 105.) If it were necessary to distinguish those cases, the differences in the structure and functions of the governmental units there involved from those of the unique unit involved here would suffice. It is enough, however, for the disposition of the case before us, that no reason has been advanced by the appellants to justify this court in disregarding the plain provision of the constitution.

The judgment of the circuit court of McHenry County is affirmed.

*Judgment affirmed.*